## JOHANNA A. L. KELLERS

*v.*

## FREDERICK T. KELLERS et al.

[Decided December 6th, 1911.]

1. The chancery court has jurisdiction of suits to quiet title calling for the construction of a will, and brought under *4 Comp. Stat. 1910 p. 5399 § 1,* providing that any person in peaceable possession of land, claiming to own it, may sue to quiet the title.

2. Where a testator devised his entire estate to his wife, if she survived him, with the proviso that she might dispose of it as she saw fit by her will, but, should she die without making a will, then it should be divided among his children, the wife took an estate which could be disposed of only by will; and upon her failure to dispose thereof the executory devise over to the children became operative.

Final hearing on bill, answer and proofs.

*Mr. John Francis Gough,* for the complainant.

*Mr. Merritt Lane,* for the defendants.

GARRISON, V. C.

This is a suit under the act to quiet title (*Gen. Stat. p. 3486; N. J. Comp. Stat. p. 5399*), and calls for the construction of a will.

It has been determined that this court has jurisdiction, under this statute, in this class of cases. *Carter* v. *Gray* (*Vice-Chancellor Grey, 1899*), *58 N. J. Eq.* (*13 Dick.*) *411; Feit* v. *Richards* (*Chancellor Magie, 1902*), *64 N. J. Eq.* (*19 Dick.*) *16; Hoagland* v. *Cooper* (*Chancellor Magie, 1903*), *65 N. J. Eq.* (*20 Dick.*) *407; Morris* v. *Le Bel* (*Chancellor Magie, 1906*), *71 N. J. Eq.* (*1 Buch.*) *43.*

The whole case turns upon the proper construction to be placed upon the will of Frederick N. Kellers, who was the husband of the complainant and the father of the defendants. The two clauses of such will that are material are as follows:

"Second:—I give, devise and bequeath to my beloved wife, Johanna A. L. Kellers, my entire estate both real and personal of whatsoever the same may consist and wheresoever situate, to her her heirs and assigns forever, if she be living at the time of my decease. In case my said wife should die before my decease it is my will, and I direct that my estate be divided among my children, Frederick T. Kellers, Charles A. B. Kellers, Alfred A. Kellers, Angenelise Elwine Johanna Kellers, Otto Henry Kellers, Clara Jane Kellers, Ferdinand Kellers, Amelia Tete Kellers, Maria Mathilda Kellers, William Kellers and Edward Kellers, each of my daughters to receive two portions or shares to each of my sons one share, and to them, their heirs and assigns forever.

"Should my said wife acquire my estate as aforesaid, she may dispose of my estate by will as she sees fit, should she however die without making a will, then this will shall operate and my estate be divided between my children as hereinbefore provided."

The insistence of the defendants is that by a proper construction of the terms of this will Johanna Kellers, the widow (the complainant), was given a life estate in the property in question with a power to dispose thereof by will, and not otherwise; and that, in default of her disposing of the property by her will, it goes to and becomes the property of these defendants in fee.

The insistence of the complainant is that she was given a fee-simple, without qualification or restriction; and that the attempted limitation over is void.

It is not useful for me to set forth what I may consider the testator in this case to have meant, or to seek the aid of authorities outside of our own jurisdiction to ascertain what construction has been placed upon similar language, if it be the fact, as contended for by the defendants, that the question has been settled by the decisions of the court of errors and appeals of this state. The defendants insist that I am constrained to construe this will as devising a life estate to the widow, with power to dispose of the estate by will but not otherwise; and that if she does not so dispose of it, then the limitation over is good, because such construction is in exact accordance with the principles laid down by the court of errors in the cases of *Kent* v. *Armstrong (1850), 6 N. J. Eq. (2 Halst. Ch.) 637*, and *Cantine* v. *Brown (1884), 46 N. J. Law (17 Vr.) 599.*

The first of these cases arose in the court of chancery, which referred the same to the supreme court for its opinion, and that court held that by the proper construction of the will an estate in fee-simple, without qualifications or limitations over, was vested in the first taker; and the chancellor decreed accordingly. This decree was reversed in the court of errors and appeals, and it found that by a proper construction of the will the first taker took a life estate with power to dispose of the whole estate by will, but not otherwise, and that, in default of such disposition, the remainder over became vested.

In the later case of *Cantine* v. *Brown,* the court of errors and appeals affirmed a judgment of the supreme court which construed the will in that case as devising a life estate in the first taker with power to dispose of the same by will, and not otherwise, and, in default of such disposition, the limitation over to become vested; and, in doing so, stated that it was following the decision in the case of *Kent* v. *Armstrong, 6 N. J. Eq. (2 Halst. Ch.) 637.*

Since I conceive that the authorities elsewhere and the case upon reason would call for an opposite conclusion than that which is attributed to the decisions in the two cases just referred to, it becomes necessary to examine those cases with extreme care in order to determine whether a different rule of construction has thereby been established in this state than exists else-

where, and than would, upon general principles and proper deductions therefrom, otherwise apply.

Taking up first, in point of time, the case of *Kent* v. *Armstrong,* it will be found that the language of the will which the court was therein required to construe, was as follows:

"I give and bequeath all the rest and residue of my estate in the States of New York and New Jersey, or wherever else situated, whether real, personal or mixed, * * * to my beloved daughter Eliza Rosetta Armstrong, to be by her possessed and enjoyed and occupied to her and her heirs forever, * * * but if my said daughter Eliza Rosetta should die without heirs and intestate, then my will is that all the estate above devised to her shall vest in my son Charles M. Armstrong and my daughter Margaret Salter and their heirs, to be divided between them share and share alike."

In the supreme court—*21 N. J. Law (1 Zab.) 509 (1848)*— the case was considered by Chief-Justice Green and Justices Nevius and Carpenter, and their conclusion was unanimous, the two last named writing opinions. The opinion of Justice Nevius, after stating the questions which had been submitted for consideration, determined to only consider the first thereof, because, if that were settled in the affirmative, it would not be necessary to express any opinion upon the others. The first question so considered was "whether the devise to Eliza by force of the words 'and intestate' do or do not give to her a fee-simple estate in the lands, and an absolute property in the personal estate, or if not a fee-simple in the lands, an absolute property in the personal estate." He proceeds then to point out that by the will the testatrix gave to Eliza a fee-simple estate in the lands and an absolute property in the personal estate, followed by the proviso that if she should die without issue and intestate, then both classes of property should vest in others (in fact, her brother and sister) ; that if the words "and intestate" had been omitted in the proviso the estate devised to Eliza in the lands would have been a fee-tail with an executory devise (*sic*) over, to take effect upon the contingency of Eliza's death without issue, because the word "heirs" in this connection cannot be construed as "heirs general" on account of the devise over being to two of her heirs general, but must be construed to mean "heirs of her body" or "issue."

Among other authorities cited by him for this conclusion is the case of *Wardell* v. *Allaire, 20 N. J. Law (Spenc.) 6.* That case establishes that if the limitation over is to take effect upon a definite failure of issue, the previous estate is a fee-simple with limitation over by way of executory devise; if upon an indefinite failure of issue, then the contingency is too remote for an executory devise, and the estate is an estate tail.

Although he does not make it clear by his opinion, I think it must follow that Justice Nevius, in applying the doctrine of *Den* v. *Allaire* to the case in hand, must have meant to hold that since the will, construed in the light of that case, devised to Eliza an estate in fee, but if she should die without heirs of her body, then over to her brother and sister, the estate so devised was a devise in fee-simple to her with limitation over by way of executory devise; and that she, therefore, took an estate in fee-simple defeasible in the event of her dying without issue then living.

The next question that he considered was whether this construction could stand in this will because of the presence of the further words therein "and intestate," and he then applies those cases to the case in hand which hold that if there is any power of destructibility by way of disposing of the estate vested in the first taker, it destroys an executory devise limited upon such prior destructible estate; and he holds that since, by the will in question, Eliza was given the power to dispose completely of the estate by making a will, the devise over was bad, and Eliza had a complete fee-simple in the estate, without qualification or limitation over.

Justice Carpenter in his opinion said that it was not disputed that if the word "intestate" was omitted from the proviso, the proviso would show an estate tail to the daughter with a limitation over, on failure of issue, by way of contingent remainder, because the words "dying without heirs" imported an indefinite failure of issue; and, as we have just said, in considering Justice Nevius' opinion, that is their effect as determined in this state, as shown by *Wardell* v. *Allaire.* The effect of this would be to cut the fee previously given to Eliza to a fee-tail.

He then considers the effect of the word "intestate" in the proviso, and determines that it refers to a contingency which must necessarily occur at the very instant of the death of E. R., and that, therefore, the failure of issue meant a definite failure at the time of her death. And the effect of this, as has previously been shown, is to create a defeasible fee in the first taker, and not a fee-tail. But, further, he says that the word "intestate" may imply a power of disposition in the devisee, Eliza, and if it does, it destroys and avoids the limitation over. And this is in consonance with the law as it existed. For while an executory devise was a scheme by which a fee could be limited upon a fee, it was held that if the first taker was given power of disposition this was inconsistent with giving effect to the executory devise, and destroyed it, and made a fee-simple in the first taker without qualification or limitation over. He points out that there has attempted to be made a distinction between the power to dispose by will and power otherwise to dispose of the property; but he finds that no such distinction exists, and that inviolability seems to be a prime characteristic of an executory devise; and that if the rights of the second taker are at the mercy of the first taker, who has power to dispose of the estate devised, the effect is to destroy any right whatever in the second taker, and to vest the whole fee-simple, unqualified and unlimited, in the first taker. He concludes as follows: "The case before us is not one where it is left to construction whether a general or indefinite devise shall be construed an estate for life only, or enlarged to a fee by implication. It is the case of a fee first given by express words, with a power of disposition by will. This power is one inconsistent with and destructive of, the limitation over, and there remains therefore nothing to abridge the power of disposition during life, which is an incident to property."

As has been before stated, the decree of the chancellor—which will be found on page 574 of *6 N. J. Eq.* (*2 Halst. Ch.*)—was reversed by the court of errors and appeals in an opinion beginning at page 637 of the same volume. This opinion was delivered by Mr. Justice Randolph, and was concurred in by Judges Wall, Speer and McCarter, and was dissented from by

Justice Ogden and Judges Porter and Schenck. In the opinion Justice Randolph agrees with the justices of the supreme court previously quoted, that the will first gave a fee to Eliza, and then, by using the words "die without heirs," if without other qualification or annexation, reduced the same to an estate in fee-tail with a contingent remainder to her brother and sister. But to the qualification "die without heirs" the testatrix had added the words "and intestate," and he says "the whole case turns upon these two words." He says that, confined to the restriction which, as we have seen, reduced the fee of an estate tail, the words "and intestate" merely "changed what was before an indefinite failure of issue to a definite failure upon the death of the first devisee, and so made the estate given to Eliza, either by the original devise of the fee-simple and absolute interest, or by the general and absolute power of disposal, as insisted by counsel, implied by the words 'and intestate,' an absolute estate in fee-simple, and the executory devise over to Charles and Margaret void." He does not, however—curious as it may seem—adopt as the law that which he has just stated to be the law; but, on the contrary, as nearly as I can make out from a most careful reading of his opinion, pursues the following line of thought: he says this will first gave the absolute fee-simple to Eliza; but he does not stop there because of the canon of construction that requires consideration of the whole will; and he then finds that the testatrix qualified this first devise by devising to Eliza the estate upon condition that if she die without heirs and intestate it shall go over to her brother and sister; that the words "die without heirs" (leaving aside now the subsequent words "and intestate"), would imply an indefinite failure of issue, and this would make Eliza's estate a fee-tail with a contingent remainder to her brother and sister. But these words must not be so considered in this will, because, in the first place, the devise over is to heirs general, as pointed out by Justice Nevius; and also because the subsequent words "and intestate" show that a definite failure of issue was meant, the effect of which, in law, would be to make the estate thus devised a fee-simple in Eliza, subject to defeasance if she died without

living issue, in which event the executory devise to her brother and sister would be good.

He admits, apparently, that if one attempts to make an executory devise limited upon a previous fee, and shows by the will an intention that the first taker shall have power of disposal of the estate, this destroys the purpose of the attempt, and the executory devise is void, and the first taker takes a fee-simple without qualification and unlimited. But he avoids the application of this principle to the case he was considering by holding that the words "and intestate" do not import such power of disposition by the first taker as destroys the executory devise. Had he stopped here, his departure (if it was a departure) from existing law and precedent, would only have been as to the effect to be given to the power vested in the first taker to dispose of the property by will, and would simply have held that where we find a fee in one, limited to him and his issue living at his death, with the power to make a will and dispose of the property, and if he die without issue living, and without having made a will, a limitation over the latter is an executory devise founded upon the fee in the initial taker, and the power to make a will and dispose of the property vested in the first taker would not be such a power of disposition as to avoid or destroy the limitation over by way of executory devise. But he' went much further than this, and found that the true effect to be given to the words "and intestate" was to change the quantity of estate vested in the first taker from a defeasible fee to a life estate, with power of appointment by will, or with power to dispose of the estate by will.

The real difference, as I see it, between the supreme court and the court of errors and appeals was whether the words "and intestate" imported such a power of disposition in the first taker as to destroy the limitation over. The supreme court found that they did; the court of errors and appeals found that they did not.

The supreme court, as before stated, found that the effect of the proviso, in its entirety, was to vest a fee in Eliza with a power to dispose of the same, so that the attempted limitation over by way of executory devise was futile and ineffective. The court of errors and appeals found that the limitation over was good, and could

only have reached this result by refusing to give to the words
"and intestate" such implication of power of disposition over the
estate granted in fee as to destroy the executory devise. In the
opinion, however, the justice writing the same went further than
this, and attributed to those words an effect of diminishing the
quantity of estate given to Eliza from a fee-simple to a mere life
estate coupled with a power of disposing of a fee.

The next time that this matter was considered by the court of
errors and appeals was in the case of *Canline* v. *Brown, 46 N. J.
Law (17 Vr.) 599.* This was a writ of error to the supreme
court, whose judgment was affirmed by a vote of ten judges as
against one. The devise under consideration in that case was as
follows: Caleb Harrison, by his will, gave to his three daughters
—Hannah, Margaret and Phebe—their heirs and assigns, certain
real and personal property, and then followed this provision:

"In case my daughter Phebe should remain unmarried, and should make
no disposition of her estate by will, it is my will that the estate herein
devised to her should at her decease be equally divided between her sisters,
if surviving her, and if not, among their children."

The opinion of the court of errors and appeals was written by
Chancellor Runyon, and on page 601, after citing the provisions
of the will, he says: "Phebe is still living and is unmarried.
The question presented is whether, under that devise, she takes a
fee or merely a life estate, with power of testamentary disposition
of the property. The decision of this court in *Kent* v. *Arm-
strong, 6 N. J. Eq. (2 Halst. Ch.) 637,* disposes of the question.
The devise in this case differs in no material respect from the de-
vise which was construed in that.

"There the gift was to the testatrix's daughter Eliza, to be by
her possessed, enjoyed and occupied, to her, her heirs and assigns
forever, with proviso that if she should die without heirs and in-
testate, all the estate devised to her should vest in the testatrix's
son Charles and daughter Margaret and their heirs. It was held
that Eliza took a life estate only, with a power of testamentary
disposition, and that in the event of her dying without issue and
intestate the executory devise (*sic*) over vested in Charles and
Margaret. The subject was fully considered in that case, and the

decision has stood nearly thirty-five years. It must be regarded as the law of construction in this state of such devises. It was determined that where there is a devise in fee, with a limitation over in the event of the death of the devisee without issue and without disposing of the property by will, the court will give effect to the intention of the testator and hold the devise to be a life estate only, coupled with a power of testamentary disposition."

It will be observed that the chancellor, in his opinion, says that the devise in *Cantine* v. *Brown* differs in no material respect from the devise in *Kent* v. *Armstrong*. It will be remembered that in *Kent* v. *Armstrong* that part of the devise which required construction was "if she shall die without heirs and intestate," and in this case (*Cantine* v. *Brown*) the material words are "if she shall remain unmarried and shall make no disposition of her estate by will."

Since there is an obvious difference between the words "die without issue" and the words "die unmarried," we must conclude that what the chancellor meant was that there was no difference in meaning between the words "and intestate," used in the *Kent Case,* and the words "without disposing by will," used in the *Cantine Case*. And if we consider that in each case, down until we come to determine the effect of the provision concerning the making of a will, the estate vested was a fee, and the only question was whether the provisions concerning the disposition of the estate by will showed an intention to vest the first taker with power of disposal which defeated the executory devise, we are reasonably certain of the meaning of the chancellor. In this view, therefore, we must conclude that the court of errors and appeals, by its decision in *Cantine* v. *Brown,* meant to follow its previous decision in *Kent* v. *Armstrong* by holding that where what otherwise would be determined to be an estate in fee in the first taker is limited over to others upon the failure of the first taker to make a will disposing of the same, the effect of such provision is to decrease the quantity of the previously granted fee to a life estate, with the power in the first taker of disposing of the entire estate by a will. That is to say, that the words in the devise giving power to make a will and dispose of the estate, instead of being

considered as showing an intention to vest the first taker with power to dispose of the estate (as such grant was found by the supreme court in *Kent* v. *Armstrong* to so vest him), were held to be words indicating an intention to diminish the previously granted estate in quantity, so that instead of its being a fee, as it otherwise would have been, it thereby is shown to have been intended to be a life estate. This is strikingly illustrated in the case of *Cantine* v. *Brown,* because, as the opinion shows, the devisee was still alive, and, though unmarried, could, of course, have married at any time; and the fact that, notwithstanding that feature, the court of errors and appeals still held that the devise to her was only of a life estate with the power of disposition by will must have been grounded upon a finding that the effect of giving her the power to make a will and dispose of the estate limited her interest in the estate to her life, with this added power of disposition by will.

It seems clear, from all of the opinions in *Kent* v. *Armstrong,* that there was agreement that if Eliza, the first taker, married and had issue, who were living at the time of her death, the limitation over would not take effect; but there is no reference in the opinion in *Cantine* v. *Brown* to the effect upon the estate devised to Phebe, if she married; and, therefore, I feel safe, in this confused situation, in reaching the conclusion which I stated above, namely, that in each case the court found that there was a devise of an estate in fee-simple to the first taker, with a limitation over, to take effect, in one case, if the first taker died without heirs and intestate, and, in the second case, died unmarried and intestate; and that the word "intestate" in each case had the effect of cutting down the quantity of the estate devised from a fee to a life estate, to which was added the power of testamentary disposition.

At a time between the decision of *Kent* v. *Armstrong,* in 1850, and that of *Cantine* v. *Brown,* in 1884, Mr. Justice Depue, in the case of *Downey* v. *Borden,* decided in 1872—*36 N. J. Law* (*7 Vr.*) *460* (at *p. 468*)—had occasion to consider *Kent* v. *Armstrong.* He points out, in his criticism of that case, that Mr. Justice Randolph had erred in his opinion in stating that superadded words conferring a power of disposition will be construed to give a mere power not only where the estate for life is given by

express words, but where the life estate arises by necessary implication or from a construction of the will. That if that were the law, it would, in a great measure, if not entirely, subvert the rule as applied to devises of land; that the law was that where the will created a life estate by express words, a superadded power of disposition would be held to be a mere power, and not to enlarge the quantity of the estate devised; but that where such a power were annexed to a devise, the language of which was indeterminate as to the quantity of the estate, it would serve to create an estate in fee in the first taker. But, as Mr. Justice Depue points out in the opinion just cited, the judgment in the case of *Kent* v. *Armstrong* was not based upon that ground—that is, upon the ground of the effect of superadded words to an estate expressly for life, or to one in indeterminate terms—but upon another ground, namely, that "the word 'intestate' did not import an unqualified power of disposition, but was restrictive in the sense that the disposition contemplated by the testator could only be made by a testamentary disposition, and that therefore the gift was of a mere power." And he goes on to say that in the case before him certain words were argued to import a power of disposition over lands by will only, which would bring this case within the decision of the court in *Kent* v. *Armstrong;* but as he did not so construe the language he did not have to further consider *Kent* v. *Armstrong.*

While Mr. Justice Depue did not, in the case just cited, dissect *Kent* v. *Armstrong* so as to show his view of the same, he did sufficiently examine it to show that there was no pretence by anybody that the primary estate devised in the proviso to Eliza was a life estate either by express terms or by any implication; and, of course, it could not be. And he had sufficiently considered *Kent* v. *Armstrong* to reach the conclusion that the judgment there rendered must have been founded upon construing the words "and intestate" to limit the disposition which the devisee could make of the estate to a disposition by will.

In the case of *Benz* v. *Fabian (Vice-Chancellor Grey, 1896), 54 N. J. Eq. (9 Dick.) 615,* the court says (at *p. 618)*: "In the case of *Kent* v. *Armstrong*   *   *   *   the construction limiting the estate given to be a life estate only was carried further than

in any other case in this state. * * * The court of errors recognized the rule that the gift of an estate generally, with an unlimited power of disposal, would vest a fee, but held that in the case before the court the power of disposal was not absolute; that the words 'and intestate' so limited the power that it could only be exercised in the mode prescribed, i. e., by a will, and that this was such a restriction that it could not be presumed that the testatrix, by creating the power, intended to give an absolute estate. On the contrary, these qualifications and additions were annexed to the devise to limit what would otherwise have been an 'absolute interest.' On this ground it reversed the decree and construed the devise to give a life estate only to E. R. A., and that on her dying without issue and intestate the executory devise (sic) over operated. The case stands as the law of this state to establish the construction that where there is a devise in terms in fee, with a limitation over on the death of the devisee, without issue and intestate, the power of disposition is limited to be exercised by the making of a will, and this is such a restriction of the power that the intention of the testator will be deemed to be to give a life estate only, with an added, though distinct and separate, power of disposition by will."

He next points out the criticism by Mr. Justice Depue of the language of Mr. Justice Randolph, adverted to by me above, and concludes: "But the general rule of construction in this state of such devises, as established in *Kent* v. *Armstrong,* was fully accepted and declared by that court in the case of *Cantine* v. *Brown, 46 N. J. Law (17 Vr.) 601.*"

Here, again, we find that the judge considering the case of *Kent* v. *Armstrong* (and the later case of *Cantine* v. *Brown*) seems to treat it as if the court had first found a life estate and then determined that the words "and intestate," giving the power to dispose of the estate, did not enlarge the quantity of the estate to a fee; but I am unable to extract from the case of *Kent* v. *Armstrong,* or from its later application in *Cantine* v. *Brown,* any such finding. On the contrary, I find, from the analysis of each of those cases, that what the court found was that where there is unquestionably a fee in the first taker, if it is followed by a provision that the estate is to go over if that one does not make

a will disposing of the estate, the effect of this is to limit the power of disposal by the first taker to a power of disposal by will, and thus, those cases say, to cut down the quantity of the estate from a fee to a life estate, with a superadded power of disposal.

While I incline to the opinion that the court is mistaken in its nomenclature, it may be that it is merely in a matter of name, and that an exactly similar result will be reached if a more correct term is applied. Taking *Kent* v. *Armstrong* for consideration, I fail to see the propriety of determining that the effect of the language of the will giving the power of disposition by will is to cut down the fee theretofore devised to what should technically be termed a life estate; nor do I see why it was necessary so to find in order to effectuate the result aimed at and reached by the court. It seems to me that it would have been more correct to have held that the devise to the first taker was a fee, limited over by way of executory devise upon the failure of the first taker to make a will disposing of the property. The effect of this would be to vest in the first taker a fee defeasible upon a certain contingency, to wit, his failure to make a will; and, since he was not given power to dispose of the estate except by will, his rights with respect thereto, during his life, were similar to those of a life tenant.

If I am correct in what I find to be the essential thing decided in *Kent* v. *Armstrong,* and followed in *Cantine* v. *Brown,* and referred to without being dissented from in subsequent cases, the effect of their holding (leaving aside, now, whether the estate in the first taker is called a life estate or not) is that, where a will vests by apt words a fee-simple in the first taker, and provides that upon his dying intestate the said estate shall go to others, he has no power of disposition of the estate during his life; and, in default of making a will and otherwise disposing of the estate, the limitation over is good by way of executory devise. This result is reached, and, in my view only can be reached, by holding that the words "dying without making a will" are held to show an intention on behalf of the testator that the estate devised to the first taker may only be disposed of by him by a testamentary disposition; and that their effect, therefore, is not to alter the quantity of the estate, that is given to the first taker from a fee-simple to

a lesser estate, but to indicate that an executory devise is intended; and that while the first taker has a fee, it is upon a condition subsequent, the non-fulfillment of which causes the devise to operate and vest a fee in the second taker.

If the conclusion thus reached is found to be contrary to the authorities as they previously existed in this state, or to the authorities and precedents elsewhere existing, and is not the one which would be reached if the case were one of first impression, it would be a vain thing for me to consider such other authorities and precedents because of the clear establishment of that which has been decided by these cases which I have reviewed. This extended review became necessary in this suit because, in the very able argument made to me on behalf of the complainant, I was cited to cases in the English courts and in courts of other states of the United States and to other cases in our own state, which, he contended, showed that the proper construction of the will in suit would result in finding a fee-simple absolute in the first taker, the complainant, without qualification and unlimited.

He cites to me those cases elsewhere and in our own state which hold that where there is a gift without definition of the estate given, and also an unlimited power to dispose of the same, an absolute estate passes to the beneficiary, and any subsequent gift over is void because it is inconsistent with the complete estate given to the first taker; and that it is only where the estate given is by the express terms of the will defined to be a life estate that the added power of disposal is held not to enlarge the life estate into a fee. In view of these general and undisputed principles, he argues that unless the court finds that there was a life estate by the express terms of the will, it cannot find that the power of disposition given to the first taker was a mere power; and that where the court finds that the definition of the quantity of the estate given to the first taker is indefinite or indeterminate, the added power of disposition must be held to enlarge the estate into a fee so that any limitation over would be in derogation of that fee, and void. He contends that *Kent* v. *Armstrong* and *Cantine* v. *Brown* must be confined in their application to cases in which the court finds that the devise to the first taker was by express

terms a life estate, to which the words importing a right to dispose thereof will be held to be a mere power; and in those cases such power was held to be limited to a power to dispose of by will which, therefore, did not enlarge the previously given life estate into a fee. I should very willingly coincide in this argument if I were able, in reason, to do so; because by doing so, it seems to me, it would be reconciling the decisions in those cases with what I understand to have been the law before their decision. My difficulty, however, in adopting this view of those cases is that there is not the slightest ground on which to find that the court in either case determined that the estate devised to the first taker was a life estate which by the superadded words of disposition by will was held not to be enlarged into a fee. Nor do I see how it is possible for the court in either of those cases to have even thought they were so deciding. In each of those cases, down to the point where the court began to consider the effect of the words "without disposing of the same by will" or "intestate," there was the fullest admission that the thing being dealt with was an estate in fee-simple, and the only question was whether or not the effect of a limitation over, upon the failure of the first taker to dispose of the estate by will, constituted a good executory devise or did not.

In the opinion of Mr. Justice Carpenter, in the supreme court, in *Kent* v. *Armstrong, 21 N. J. Law (1 Zab.) 509* (at *p. 524*), he distinctly said, as previously quoted: "The case before us is not one where it is left to construction, whether a general or indefinite devise shall be construed an estate for life only or enlarged to a fee by implication. It is the case of a fee first given by express words, with a power of disposition by will. This power is one inconsistent with and destructive of, the limitation over, and there remains therefore nothing to abridge the power of disposition during life, which is an incident to property."

The court of errors and appeals, as previously pointed out, came to an exactly opposite conclusion with respect to the effect to be given to the words "and intestate," and that court found, in effect, that those words limited the power of disposition in the first taker so that he had no other power of disposition than

by will; and that, therefore, the executory devise became operative. And when we consider the opinion and decision in *Cantine* v. *Brown,* in which, by unquestioned words of inheritance, a fee-simple was devised to the first taker, limited over if she should die unmarried and without having disposed of the same by will, and it was determined that although she was still alive, and therefore capable of marrying, the effect of this provision was to make the limitation over good, because she only had what they termed a life estate with a power of testamentary disposition, we are driven to the conclusion that the court of errors and appeals, in each of these cases, has determined and fixed its construction upon the words "intestate" or "without having disposed of the same by will." Those cases clearly show that the court of errors and appeals has determined that where there is a devise in fee, with a limitation over in the event that the first taker does not dispose of the same by will, the effect is to limit the power of disposal of the estate, so far as the first taker is concerned, to a testamentary disposition. And since this determination is reached, it is profitless to consider what the proper principle should otherwise be determined to be; and I shall not, therefore, attempt to cite, consider or review the law elsewhere, or other cases in this state—since, whatever the latter have held, they have not attempted to overrule the cases of *Kent* v. *Armstrong* and *Cantine* v. *Brown,* nor to disregard the law necessarily inferred from the judgment in each of them.

Having determined, therefore, that I am thus bound by the law necessarily inferred from the judgment in the two cases just cited, the next question is the application thereof to the case at bar.

By reference to a previous portion of this opinion, the exact language of the will in question will be found, and therefrom it will appear that the testator first gave to his wife an absolute fee in the estate in question if she be living at the time of his decease, if not living at the time of his decease, then the estate was devised to his children and their heirs. He then provides that if his wife does acquire the estate as aforesaid, she may dispose of it by will as she sees fit; and should she, however,

die without making a will, then his will should operate and his estate be divided among his children as thereinabove provided for.

Applying the principle of law deduced from the judgment of the cases above set forth, I am bound to conclude that the effect of this language is to vest a fee-simple in the wife, which, however, she may not dispose of in any other way than by will; and that, in default of disposing of the same by will, the limitation over is good by way of executory devise. And, if I adopt the nomenclature of *Kent* v. *Armstrong* and *Cantine* v. *Brown,* I should find her estate to be an estate for life, with a power to dispose of a fee-simple by will.

The complainant seeks to break the force of the application of the deduced principle to the case at bar by citing a line of cases in this state which hold that a devise to one, with a limitation over to others unless the first taker shall have disposed of the estate by will or otherwise, is held to be a fee-simple in the first taker, untrammeled and unlimited; and this is undoubtedly the law. The difficulty, however, is that in every such case it will be found that the reason why the court held that the limitation over did not apply was because it found that the first taker had been given a power of disposition over the estate other and further than the mere power to dispose of it by will; and there is such a clear distinction between that principle and the principle (enunciated in the cases from which I have deduced it) and applied to the case at bar, that the latter is unaffected by the existence of the former principle. I shall not stop to cite these cases, but I will say that I was not able in any one of them to find any decision contrary to the principle which I find in *Kent* v. *Armstrong* and *Cantine* v. *Brown;* but did find in every one of them that the decision was based upon the finding by the court of a power of disposition in the first taker over the estate other and more than the power of disposition by will; and this being so, as above stated, they are inapplicable to the case at bar, since in this case (which is, in my view, indistinguishable in that respect from *Kent* v. *Armstrong* and *Cantine* v. *Brown*) the only power of disposition given in the proviso is the power of disposition by will; and so far from such a power

of disposition being held to destroy the effect of the limitation over, the court of errors and appeals, in the two cited cases, went to the opposite extreme and held that it limited the power of disposition so that the limitation over obtained.

The result will be that this will will be so construed as to find in the complainant a fee-simple, of which, however, the only disposition she can make is by will; and, in the defendants, there will be found to be an estate by limitation over in the nature of an executory devise, which will become absolute in fee in them if the first taker dies without making a will disposing of the estate. And, if necessary, I shall follow the language of *Kent* v. *Armstrong* and *Cantine* v. *Brown,* and find that the estate thus found to be in the first taker will be termed a life estate with power of testamentary disposition of a fee.

The decree will be settled upon notice.